Darrell L. Cochran
Christopher E. Love
Loren A. Cochran
Pfau Cochran Vertetis Amala PLLC
911 Pacific Ave., Suite 200
Tacoma, WA 98402
Telephone: (253) 777-0799
Facsimile: (253) 627-0654
darrell@pcvalaw.com
chris@pcvalaw.com
loren@pcvalaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES CHANNELL, GREGORY GLASS, CHAD WEBB, KEVIN JONES, KERRI ANN SANPHY, & LYNN MARIE SCHIERMEYER, individually, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>      Defendant. | No.<br><br>CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL** |



FIRST AMENDED CLASS ACTION COMPLAINT
1

I.      INTRODUCTION ...................................................................................... 1

II.     Factual allegations ................................................................................... 2

        A.      Defendant Marketed, Advertised, and Represented their Diesel
                Vehicles as Being Fuel Efficient, Environmentally-Friendly, and High-
                Performance ................................................................................... 3

        B.      Volkswagen Intentionally Concealed the Excessive and Illegal Levels
                of Pollution Emitted from Its Cars ................................................. 6

        C.      Defendant has Reaped Enormous Profits from Their Diesel Vehicles ............ 9

        D.      Volkswagen's Illegal Actions Have Caused Class Members Significant
                Harm ............................................................................................. 9

III.    Class allegations .................................................................................... 11

        A.      Numerosity .................................................................................. 12

        B.      Commonality and Predominance .................................................. 12

        C.      Typicality .................................................................................... 13

        D.      Adequacy ..................................................................................... 13

        E.      Declaratory and Injunctive Relief ................................................ 14

        F.      Superiority ................................................................................... 14

IV.     Tolling of any and all otherwise-applicable statutes of limitation ............. 15

        A.      Discovery Rule Tolling ................................................................ 15

        B.      Tolling Due to Fraudulent Concealment ....................................... 16

        C.      Estoppel ....................................................................................... 17

V.      JURISDICTION .................................................................................... 17

VI.     Venue ..................................................................................................... 18

VII.    PARTIES ............................................................................................... 18

        A.      James Channell ............................................................................ 18

        B.      Gregory Glass .............................................................................. 19

FIRST AMENDED CLASS ACTION COMPLAINT
i



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

C.  Chad Webb ................................................................ 21

D.  Kevin Jones .............................................................. 22

E.  Kerri Sanphy ............................................................ 23

F.  Lynn Schiermeyer ....................................................... 24

G.  Defendant Volkswagen .................................................. 25

VIII.  CAUSES OF ACTION ........................................................ 26

A.  Claims Asserted on Behalf of the Nationwide Class ..................... 26

    1.  Count I - Fraud by Concealment ............................. 26

    2.  Count II - Breach of Contract .............................. 31

    3.  Count III - Breach of Express Warranty ..................... 32

    4.  Count IV - Breach of Implied Warranty ...................... 33

    5.  Count V - Magnuson–Moss Act (15 U.S.C. §§ 2301, *et seq.*) – Implied Warranty ................................. 34

    6.  Count VI - Unjust Enrichment ............................... 36

B.  State-Specific Claims .................................................. 36

    7.  Count VII - Violation of California Unfair Competition Law (Cal. Bus. & Prof. Cod §§ 17200, *et seq.*) ...... 36

    8.  Count VIII - Violation of California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*) ..... 38

    9.  Count IX - Violation of California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) .... 41

    10.  Count X - Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314) ................ 42

    11.  Count XI - Fraud by Concealment (California law) ............ 44

    12.  Count XII - Violation of Song-Berly Consumer Warranty Act for Breach of Implied Warranty of Merchantability (Cal. Civ. Code §§ 1791.1 & 1792) ............. 49



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

13.  Count XIII - Violation of the Washington Consumer Protection Act ("CPA") (RCW §§ 719.86, *et seq.*)..................51

14.  Count XIV - Breach of Warranties of Fitness & Merchantability (RCW §§ 62A.2-314 & 62A.2-315) .............54

15.  Count XV - Violation of the Oregon Unlawful Trade Practices Act ("UTPA") (Or. Rev. Stat. §§ 646.605, *et seq.*) .......................................................................54

16.  Count XVI - Violation of the Iowa Consumer Frauds Act ("CFA") (I.C.A. §§ 714.16 *et. seq.*)..................................56

17.  Count XVII - Violation of the Georgia Uniform Deceptive Trade Practices Act (Georgia UTPDA) (GA. CODE ANN. § 10-1-370, *et seq.*) ............................................58

18.  Count XVIII - Violation of Georgia's Fair Business Practices Act (GA. CODE ANN. § 10-1-390, *et seq.*) ............62

19.  Count XIX - Violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ch. 93A). ...........................63

IX.  PRAYER FOR RELIEF ..............................................................64

X.  JURY TRIAL DEMANDED ........................................................64



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

# I.     INTRODUCTION

1.      Plaintiffs James Channell, Gregory Glass, Chad Webb, Kevin Jones, Kerri Ann Sanphy, and Lynn Marie Schiermeyer, individually and on behalf of all others similarly situated, allege the following against Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"), based where applicable on personal knowledge, information and behalf, and the investigation of counsel.

2.      In a September 29, 2015 direct mailing to owners or lessees of certain models of its diesel vehicles, Volkswagen announced to its customers that the Environmental Protection Agency ("EPA") and the California Air Resources Board ("CARB") "had determined that certain 2.0L 4-cylinder TDI vehicles ***do not comply with emissions standards***"[1]

3.      Volkswagen's direct mailing continued with an unexplained statement to its customers that it was offering "a personal and profound apology" and admitted that it has "violated [their trust]."[2]

4.      Although Volkswagen's mailing makes no reference to the facts giving rise to the violation of trust or apology, newspaper accounts detail a diabolical boardroom scheme of fraud in the design and manufacture of Volkswagen's diesel vehicles distributed and sold in the United States, a fraudulent scheme designed to trick American consumers and evade American environmental pollution controls created to protect air quality.  Volkswagen's September 29, 2015 offer of an apology and acknowledgement of its violation of trust

---

[1] Ex. A (emphasis added).

[2] *Id.*



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

represents a continued deception of American consumers by failing to acknowledge forthrightly that it engaged in a pattern of consumer fraud on multiple levels, including but not limited to falsely marketing a fuel efficient, environmentally friendly vehicle but, in fact, selling vehicles in which Volkswagen had installed a legally-prohibited "defeat device"—in this case, sophisticated software—allowing its diesel vehicles to meet emissions standards when tested while inflating their mileage and dramatically increasing their pollution under normal driving conditions.   Volkswagen's letter of contrition also failed to inform its customers that it has admitted installing this "defeat device" in its vehicles.

5.   Instead, Volkswagen advised its customers that they "do not need to take any action at this time" and asked for their "patience."[3]

6.   Volkswagen has perpetrated possibly one of the largest, most blatant consumer frauds in recent history. This lawsuit seeks to hold Volkswagen accountable to the fullest extent allowed by law.   Accordingly, as detailed below, Plaintiffs bring this lawsuit on behalf of themselves and the Class alleged herein.

## II.   FACTUAL ALLEGATIONS

7.   The United States Government, through the Environmental Protection Agency ("EPA"), has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these US laws and must adhere to EPA rules and regulations.   This case arises because Defendant purposefully and intentionally breached the laws of the United States and the rules and regulations of the EPA by selling in the United

---

[3] *Id.*



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

States vehicles manufactured by its affiliates Volkswagen AG and Audi AG that purposefully evaded federal and state laws.  As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health."  Yet that is exactly what Volkswagen did in its 2009-2015 Volkswagen and Audi diesel vehicles.

8.      Indeed, Defendant intentionally designed and sold cars that misled consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced. Despite touting themselves as an environmentally conscientious company that produced thoughtful cars for people who cared about the environment, Defendant sold expensive cars that produced pollution at orders of magnitude above federal and state regulations, and then intentionally and knowingly hid the truth about those cars.

**A. Defendant Marketed, Advertised, and Represented their Diesel Vehicles as Being Fuel Efficient, Environmentally-Friendly, and High-Performance**

9.      For years, Volkswagen has advertised its diesel vehicles as low-emission, fuel-efficient cars. Indeed, this marketing message is at the core of its image in the United States and has been remarkably successful: Volkswagen has become the largest seller of diesel passenger vehicles.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com



10.     Defendant's success is based in large part on promoting its diesel cars as "clean" and "green" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendant's diesel engine marketing campaign. "CleanDiesel" is in the very name of the vehicles about which Defendant lied.

11.     Defendant's environmental marketing campaign has gone beyond just the model names and purported attributes of their vehicles. For example, on the "Environment" page of its website, Volkswagen Group of America states that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."[4]   Defendant further represented, "Environmental stewardship

---

[4] Ex. B (Volkswagen Group of America's "Environment" page of its website as captured by the Internet Archive on January 20, 2014; Defendant has since removed this material from its website).



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

has always been an integral part of our business, not an obligatory side issue."[5]  Defendant

further trumpeted the accolades it had reaped as a result of its representations, stating that it

had been recognized as "'the most environmentally friendly car company selling in the USA'"

by J.D. Power and Associates.[6]

12.    Beyond merely advertising, Defendant supported and directed a website to

promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the

technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low

sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."[7]

13.    Defendant's representations did not stop there, also claiming that its diesel

vehicles offer the best of every world:  environmental friendliness, fuel efficiency, and high

performance.  For example, in the "Fuel Efficiency" page of its website, Defendant states that

it offers "better-engineered, efficient vehicles that don't sacrifice performance."[8]  Likewise,

on the "Clean Diesel TDI" page, Defendant represented, "Clean diesel delivers more torque,

lower fuel consumption, and reduces $CO_2$ emissions compared with equivalent gasoline

engines."[9]   Finally, Defendant proclaimed a continued commitment to "clean diesel

technology and innovative solutions that improve efficiency and driving dynamics."[10]

14.    Unfortunately for consumers who bought Defendant's cars and for the general

public, Defendant's representations were far from "truthful." Defendant has designed and sold

---

[5] *Id.*

[6] *Id.*

[7] Ex. C

[8] Ex. D (Volkswagen Group of America's "Fuel Efficiency" page of its website as captured by the Internet Archive on January 20, 2014; Defendant has since removed this materials from its website)

[9] *Id.*

[10] *Id.*



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

9ll Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

cars that emit pollutants at extraordinary levels, failing state and federal environmental regulations by incredible margins.

**B. Volkswagen Intentionally Concealed the Excessive and Illegal Levels of Pollution Emitted from Its Cars**

15.     On September 18, 2015, the EPA issued a Notice of Violation ("NOV").[11] The NOV explains that Defendant installed sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

16.     Most modern engines, including Volkswagen's "CleanDiesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency. These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

---

[11] Ex. E.



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
9ll Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

17.     These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

18.     Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

19.     Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

20.     In short, this software allows Defendant's diesel vehicles to meet emissions standards in labs or state testing stations, while permitting the vehicles to emit nitrogen oxides

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

(NOx) at up to 40 times the standard allowed under United States laws and regulations during the normal operation of the vehicles.

21.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at an acute risk of health effects from these pollutants.

22.     The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified.  By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws.

23.     According to the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Defeat Device Vehicles"):  MY 2009-2015 VW Jetta; MY 2009-2014 Jetta Sportwagen; MY 2009-2015 VW Beetle; MY 2012-2015 VW Beetle Convertible; MY 2009-2015 VW Golf; MY 2015 Golf Sportwagen; MY 2012-2015 VW Passat; and MY 2009-2015 Audi A3.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

**C.  Defendant has Reaped Enormous Profits from Their Diesel Vehicles**

24.     Defendant charges substantial premiums for the Defeat Device Vehicles. For example, the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta models with a comparable gasoline engine is substantially higher: The Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a 31% premium.

25.     These premiums occur across all of the vehicles in which Defendant installed its "defeat device" for emissions testing. The table below sets forth the price premium for each comparable base, mid-level, and top-line trim for each affected model:

## CleanDiesel Price Premiums

| Model | Base | Mid-level | Top-line |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

**D.  Volkswagen's Illegal Actions Have Caused Class Members Significant Harm**

26.     Although the EPA has ordered Defendant to recall the Defeat Device Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation, purchasers of the Defeat Device Vehicles have and will continue to suffer significant harm. First, Volkswagen will not be able to make the Defeat Device Vehicles comply with emissions standards without substantially degrading their performance



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Defeat Device Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.

27.     Second, this will necessarily result in a diminution in value of every Defeat Device Vehicle. Not only did Class members pay too much for cars now worth substantially less, but they will end up paying more to fuel their less efficient cars over the years they own their vehicles.

28.     As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit 40 times the allowed levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

29.     Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Volkswagen recalls the Defeat Device Vehicles and degrades the CleanDiesel engine performance in order to make the Defeat Device Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend more on fuel and will not benefit from the performance qualities of their vehicles as advertised. Moreover, Defeat Device Vehicles will necessarily be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of Defeat Device Vehicles will not be able to recoup nearly as much value in the future.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

30.     According to media sources, Defendant's CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendant would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines.   Winterkorn—Germany's highest-paid CEO, as reported in a September 23, 2015 article in *The New York Times*—resigned on September 23, 2015.

### III.     CLASS ALLEGATIONS

31.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who are current or former owners and/or lessees of a "Defeat Device Vehicle." Defeat Device Vehicles include, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

32.     Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

33.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

34.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**A. Numerosity**

35.     The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

**B. Commonality and Predominance**

36.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether Volkswagen engaged in the conduct alleged herein;

(b)     Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States;

(c)     Whether the CleanDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

(d)     Whether the CleanDiesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat Device Vehicles;



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

(e)     Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

(f)     Whether Volkswagen designed, manufactured, marketed, and distributed Defeat Device Vehicles with a "defeat device";

(g)     Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(h)     Whether Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles;

(i)     Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(j)     Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

**C.  Typicality**

37.     Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

**D.  Adequacy**

38.     Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and



9ll Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

### E.  Declaratory and Injunctive Relief

39.     Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

### F.  Superiority

40.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the Class to individually seek redress for Volkswagen's wrongful conduct.

41.     Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

9ll Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## IV.     TOLLING OF ANY AND ALL OTHERWISE-APPLICABLE STATUTES OF LIMITATION

### A.     Discovery Rule Tolling

42.     The tolling doctrine was made for cases of concealment like this one. For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

43.     Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiffs and members of the proposed Class could not have discovered that Volkswagen was concealing and misrepresenting the true emissions levels of its vehicles, including but not limited to its use of defeat devices, as demonstrated by facts already widely-reported.

44.     For example, it took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part.  As reported in the *New York Times* on September 19, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road. The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA. The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software.

45.      Likewise, as reported by the *Los Angeles Times* on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

module was deceiving emissions certifications tests.   Thus, Volkswagen's deception with respect to its CleanDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

46.     Plaintiffs and the other Class members could not reasonably discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen intentionally failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers.

47.     Likewise, a reasonable and diligent investigation could not have disclosed that Volkswagen had information in its sole possession about the existence of its sophisticated emissions deception and that it concealed that information, which was discovered by Plaintiffs immediately before this action was filed. Plaintiffs and other Class members could not have previously learned that Volkswagen valued profits over compliance with applicable federal and state emissions and consumer law.

**B.     Tolling Due to Fraudulent Concealment**

48.     Throughout the relevant time period, all applicable statutes of limitation have been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

49.     Instead of disclosing its emissions deception, or that the emissions from the Defeat Device Vehicles were far worse than represented, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1

**C.      Estoppel**

2      50.      Volkswagen was under a continuous duty to disclose to Plaintiffs and the other

3

4   Class members the facts that it knew about the emissions from Defeat Device Vehicles, and of

5   those vehicles' failure to comply with federal and state laws.

6      51.      Although it had the duty throughout the relevant period to disclose to Plaintiffs

7

8   and Class members that it had engaged in the deception described in this Complaint,

9   Volkswagen chose to evade federal and state emissions and clean air standards with respect to

10  the Defeat Device Vehicles, and it intentionally misrepresented its blatant and deceptive lack

11  of compliance with federal and state law regulating vehicle emissions and clean air.

12     52.      Thus, Volkswagen is estopped from relying on any statutes of limitations in

13  defense of this action.

14                              **V.      JURISDICTION**

15     53.      This Court has subject matter jurisdiction over this action under the Class

16  Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  At least one Plaintiff and Defendant are

17  citizens of different states, there are more than 100 Class members, and the aggregate amount

18  in controversy exceeds $5 million, exclusive of interest and costs.

19     54.      This Court has pendant and supplemental subject matter jurisdiction over the

20  state law claims over the state law claims pursuant to 28 U.S.C. § 1367.

21     55.      This Court has personal jurisdiction over the Defendant because Defendant is

22

23  licensed to and regularly does conduct business in Washington; the unlawful conduct alleged

24  in this Complaint occurred in, was directed to, and/or emanated, in part, from Washington;

25  and/or Defendant has sufficient minimum contacts with Washington.

26



FIRST AMENDED CLASS ACTION COMPLAINT
17 of 65

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

# VI.     VENUE

56.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in, was directed to, and/or emanated from this District.  These events and omissions included but are not limited to:  Plaintiff James Channell resides in this District, purchased his Defeat Device Vehicle in this District, and Volkswagen has marketed, advertised, sold, and leased the Defeat Device Vehicles within this District.

57.     Venue is additionally proper because Defendant is registered to and does conduct business in this District.

# VII.     PARTIES

## A.     James Channell

58.     Plaintiff James Channell, a citizen of Graham, Washington, purchased a 2013 diesel Volkswagen Beetle TDI in April 2014 from a dealership named Auburn Volkswagen in Auburn, Washington, spending approximately $21,500.00.

59.     Mr. Channell became interested in buying the diesel Beetle when, on or around April 2014, he conducted extensive research in automotive publications and websites such as Car and Driver, Edmunds.com, Kelly Blue Book, Motor Trend, and Consumer Reports and learned of Volkswagen's representations regarding its "CleanDiesel" vehicles' environmental friendliness, fuel efficiency, and high performance.   He has also owned numerous Volkswagen vehicles in the past and had come to trust Volkswagen as a reputable automotive company.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

60.     At Auburn Volkswagen, Mr. Channell picked up "CleanDiesel" and diesel Beetle marketing materials and spoke with sales representatives who assured him of the vehicle's fuel efficiency, environmental friendliness, and strong performance as represented by Volkswagen.  He also confirmed these qualities by reviewing the vehicle's "certified used" window sticker.

61.     Among the most important factors for Mr. Channell's decision to purchase the Beetle was the fact that it was advertised as environmentally "clean," unlike diesel cars of the past.

62.     Given the importance of the car's "clean" reputation, Mr. Channell was disappointed to learn that Volkswagen installed a "defeat device" that artificially inflates the automobile's mileage while dramatically increasing its pollution.  Had he known that the vehicle included the defeat device, he would have paid less, and probably would not have purchased the Beetle at all.  Additionally, given that he had come to trust Volkswagen over the years as one of the best car companies, he was dismayed to learn that he owned a Defeat Device Vehicle.

63.     Mr. Channell is, understandably, disappointed that he bought a car that Defendant represented to him pollutes far less than it actually does.  He also believes the recall will lead to decreased performance, decreased mileage, and increased fuel costs over the life of his car.  It will also cause a diminution of the resale value of his vehicle.

**B.     Gregory Glass**

64.     Plaintiff Gregory Glass, a citizen of Paso Robles, California, purchased a used 2013 diesel Jetta TDI on or around July 10, 2015 from a private party, Rebecca Kretzu,



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

spending approximately $17,500.00. Mr. Glass purchased the car for everyday use in his real estate business.

65.     Mr. Glass became interested in buying the diesel Jetta when, on or around April 12, 2015, he viewed Volkswagen advertisements touting its "CleanDiesel" vehicles' environmental friendliness, fuel efficiency, and high performance. Before purchasing the car, he also confirmed these qualities by reviewing the vehicle's original window sticker.

66.     Among the most important factors for Mr. Glass's decision to purchase the Jetta was the fact that it was advertised as environmentally "clean." He also highly valued the car's alleged fuel efficiency, as he uses the car for frequent, everyday travel in his real estate business and expected significant savings in fuel costs.

67.     Given the importance of the car's "clean" reputation, Mr. Glass was disappointed to learn that Volkswagen installed a "defeat device" that artificially inflates the automobile's mileage while dramatically increasing its pollution. Had he known that the vehicle included the defeat device, he would have paid less, and probably would not have purchased the Glass at all.

68.     Mr. Glass is, understandably, disappointed that he bought a car that Defendant represented to him pollutes far less than it actually does. He also believes the recall will lead to decreased performance, decreased mileage, and increased fuel costs over the life of his car. It will also cause a diminution of the resale value of his vehicle. Finally, he is also worried that being seen in a vehicle known to emit excessive pollution in the course of his business will send a poor message to his clients.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

**C.      Chad Webb**

69.      Plaintiff Chad Webb, a citizen of Des Moine, Iowa, purchased a 2013 diesel Volkswagen Passat on or about April 1, 2013 from a dealership named Lithia Volkswagen of Des Moines in Johnston, Iowa, spending approximately $32,500.00.

70.      Mr. Webb became interested in buying the diesel Passat when, on or around December 2012, he conducted extensive research in online automotive publications such as Car and Driver, Edmunds.com, and Consumer Reports and learned of Volkswagen's representations regarding its "CleanDiesel" vehicles' environmental friendliness, fuel efficiency, and high performance.

71.      At Lithia Volkswagen, Mr. Webb took the Passat for a test drive.  During the drive, he remarked on the quietness of the engine as compared to other diesel engines. The dealership representative took the opportunity to share Volkswagen's claims regarding the superior manufacture and environmental friendliness of its "CleanDiesel" engines, even stating that, by 2015, exhaust from "CleanDiesel" engines would be safe for consumers to breathe directly.

72.      Among the most important factors for Mr. Webb's decision to purchase the Passat was the fact that it was advertised as environmentally "clean," unlike diesel cars of the past.

73.      Given the importance of the car's "clean" reputation, Mr. Webb was disappointed to learn that Volkswagen installed a "defeat device" that artificially inflates the automobile's mileage while dramatically increasing its pollution.  Had he known that the



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

vehicle included the defeat device, he would have paid less, and probably would not have purchased the Passat at all.

74.     Mr. Webb is, understandably, disappointed that he bought a car that Defendant represented to him pollutes far less than it actually does.  He also believes the recall will lead to decreased performance, decreased mileage, and increased fuel costs over the life of his car. It will also cause a diminution of the resale value of his vehicle.

**D.     Kevin Jones**

75.     Kevin Jones is currently a citizen of Waterford, California.  In or around March 2012, while a citizen of Valdosta, Georgia, Mr. Jones became interested in purchasing a new vehicle in preparation for his planned retirement from the military and move to California.  Mr. Jones knew that, as part of his new job in California, he would likely be commuting for work.  As a consequence, it was very important to Mr. Jones that his new vehicle comply with California's strict emissions standards and be fuel efficient.

76.     On or about March 14, 2012, Mr. Jones viewed Volkswagen's website for the diesel Jetta TDI.  Mr. Jones was particularly struck by the website's representation that the vehicle possessed mileage of up to 50 miles per gallon and its environmental friendliness. Based on those representations, on or about March 15, 2012, he visited Pipkin Volkswagen (now O'Steen Volkswagen of Valdosta) in Valdosta, Georgia, where he viewed a diesel Jetta TDI.  He distinctly observed that the window sticker for the vehicle represented that its mileage was up to 49 miles per gallon.  He also reiterated his intention to move to California and his concerns about the vehicle's compliance with California emissions standards, but was reassured by a dealership representative that, per Volkswagen, the Jetta was an



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

environmentally friendly "CleanDiesel" vehicle with fewer emissions than gasoline vehicles and compliant with all state and federal emissions standards.  Based on those representations, Mr. Jones traded in his gasoline-powered 2008 Ford F-150 in order to purchase the diesel Volkswagen TDI for approximately $28,000.00.

77.     Given the importance of the car's "clean" reputation; its compliance with state and federal emissions standards; and its fuel efficiency, Mr. Jones was disappointed to learn that Volkswagen installed a "defeat device" that artificially inflates the automobile's mileage while dramatically increasing its pollution.  Had he known that the vehicle included the defeat device, he would have paid less, and probably would not have purchased the Jetta at all.

78.     Mr. Jones is, understandably, disappointed that he bought a car that Defendant represented to him pollutes far less than it actually does and, in fact, is not compliant with the emissions standards of both the federal government and his new state of residency.  He also believes the recall will lead to decreased performance, decreased mileage, and increased fuel costs over the life of his car.  It will also cause a diminution of the resale value of his vehicle.

**E.     Kerri Sanphy**

79.     Kerri Sanphy is currently a citizen of Houston, Texas.  On or around May 2012, while a citizen of Saugus, Massachusetts, was the lessee of a gasoline-powered 2010 Volkswagen Tiguan sport utility vehicle.  After learning of Volkswagen's representations regarding the environmentally friendly and fuel efficient qualities of its diesel vehicles, she became interested in purchasing one.

80.     On May 7, 2012, Ms. Sanphy purchased a diesel 2012 Volkswagen Jetta from Commonwealth Motors in Lawrence, Massachusetts for approximately $28,280.  As part of



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

the purchase, she traded in her 2010 Tiguan for approximately $3,287 less than its value at the time.  She took this loss because, based on Volkswagen's representations regarding the "green" and fuel efficient qualities of its diesel vehicles, she believed purchasing the diesel Jetta was a much more environmentally and financially responsible decision than continuing to drive a gasoline-powered sports utility vehicle.

81.     Given the importance of the car's "clean" reputation and its fuel efficiency, Ms. Sanphy was disappointed to learn that Volkswagen installed a "defeat device" that artificially inflates the automobile's mileage while dramatically increasing its pollution.  Had she known that the vehicle included the defeat device, she would have paid less, and probably would not have purchased the Jetta at all.

82.     Ms. Sanphy is, understandably, extremely dismayed that she bought a car that Defendant represented to her pollutes far less than it actually does.  She also believes the recall will lead to decreased performance, decreased mileage, and increased fuel costs over the life of her car.  It will also cause a diminution of the resale value of her vehicle.

**F.     Lynn Schiermeyer**

83.     Lynn Schiermeyer, a citizen of Grants Pass, Oregon, purchased a 2012 diesel Volkswagen Golf TDI on or about February 1, 2013, from a dealership named Lithia Medford Volkswagen in Medford, Oregon, spending approximately $23,000.00.

84.     Ms. Schiermeyer became interested in buying the diesel Golf when, on or around December 1, 2012, she viewed Volkswagen advertisements touting its "CleanDiesel" vehicles' environmental friendliness, fuel efficiency, and high performance.  She has also owned other Volkswagen vehicles in the past.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

85.     At Lithia Medford Volkswagen, Ms. Schiermeyer spoke with sales representatives who assured her of the Golf's fuel efficiency, environmental friendliness, and strong performance by sharing Volkswagen's representations regarding the vehicle.

86.     Among the most important factors for Ms. Schiermeyer's decision to purchase the Golf was the fact that it was advertised as fuel efficient and environmentally "clean," unlike diesel cars of the past.

87.     Given the importance of the car's fuel efficiency and "clean" reputation, Ms. Schiermeyer was disappointed to learn that Volkswagen installed a "defeat device" that artificially inflates the automobile's mileage while dramatically increasing its pollution.  Had she known that the vehicle included the defeat device, she would have paid less, and probably would not have purchased the Golf at all.  Additionally, given that she had come to trust Volkswagen over the years as one of the best car companies, she was dismayed to learn that he owned a Defeat Device Vehicle.

88.     Ms. Schiermeyer is, understandably, extremely dismayed that she bought a car that Defendant represented to her pollutes far less than it actually does.  She also believes the recall will lead to decreased performance, decreased mileage, and increased fuel costs over the life of her car.  It will also cause a diminution of the resale value of her vehicle.

**G.     Defendant Volkswagen**

89.     Defendant Volkswagen Group of America, Inc. is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. §

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1332(d)(10).   Volkswagen is also registered to conduct business in the State of Washington (Washington State UBI Number 601002755).

90.    At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen and Audi brand names throughout the nation. Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Defeat Device Vehicles, including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## VIII.    CAUSES OF ACTION

**A.    Claims Asserted on Behalf of the Nationwide Class**

### 1.    Count I - Fraud by Concealment

91.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

92.    Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Defeat Device Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

93.    The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Defendant intended: vehicles passed emissions certifications by way of deliberately induced false readings.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at 40 times applicable standards.

94.     Plaintiffs and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's deception on their own.

95.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.

96.     Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiffs and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.

97.     Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

98.     Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the vehicles at issue because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were unknown to or were not reasonably discoverable by Plaintiffs or Class members.

99.     Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

100.    Having volunteered to provide information to Plaintiffs and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Defeat Device Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a



9ll Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process.

101.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

102.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions deception.

103.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

104.     Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damages because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

105.     The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

106.     Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

107.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

108.    Plaintiffs plead this Count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than Virginia.

### 2.   Count II - Breach of Contract

109.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

110.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device." Accordingly, Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

111.    Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

selling or leasing Plaintiffs and the other Class members defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

112.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### 3. Count III - Breach of Express Warranty

113.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

114.    Plaintiffs bring this Count against Defendant for breach of express warranty on behalf of themselves and the Class.

115.    Defendant made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the performance and emission controls of its diesel vehicles.

116.    Defendant, however, knew or should have known that its representations, descriptions, and promises were false. Defendant was aware that it had installed defeat devices in the vehicles it sold to Plaintiffs and Class members.

117.    Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

perform as was warranted. Unbeknownst to Plaintiffs, those vehicles included devices that caused their emission reduction systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiffs and Class members.

118.    As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant damages and seek the relief described below.

### 4. Count IV - Breach of Implied Warranty

119.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

120.    Plaintiffs bring this cause of action against Volkswagen for breach of implied warranty on behalf of themselves and the Class.

121.    Volkswagen made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the functionality of Volkswagen's "clean" diesel technology.

122.    Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing the Defeat Device vehicles.

123.    As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions and promises regarding its diesel engines were false.

124.    When Plaintiffs and Class members purchased Volkswagen's diesel vehicles, they did not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

environmental standards. Instead, as alleged above, those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

125.    Accordingly, the Defeat Device Vehicles failed to conform to Volkswagen's implied warranty regarding their functionality.

126.    As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant injury when Volkswagen sold them cars that, it is now clear, are worth far less than the price Plaintiffs and Class members paid for them. Accordingly, Plaintiffs and the Class seek the relief described below.

**5.   Count V - Magnuson–Moss Act (15 U.S.C. §§ 2301, *et seq.*) – Implied Warranty**

127.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

128.    Plaintiffs assert this Count on behalf of themselves and the other members of the Class.

129.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

130.    Volkswagen's Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

131.    Plaintiffs and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

132.    Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

133.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

134.   Volkswagen provided Plaintiffs and Class members with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

135.   Volkswagen has breached these implied warranties as described in more detail above. Without limitation, Volkswagen's Defeat Device Vehicles are defective, as described above, which resulted in the problems and failures also described above.

136.   By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its obligations under its written and implied promises, warranties, and representations.

137.   In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

138.   All jurisdictional prerequisites have been satisfied.

139.   Plaintiffs and members of the Class are in privity with Volkswagen in that they purchased the software from Volkswagen or its agents.

140.   As a result of Volkswagen's breach of implied warranties, Plaintiffs and the Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

**6. Count VI - Unjust Enrichment**

141.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

142.     Plaintiffs bring this Count on behalf of themselves and, where applicable, the Class.

143.     Plaintiffs and members of the Class conferred a benefit on Defendant by, inter alia, using (and paying for) its vehicles.

144.     Defendant has retained this benefit, and know of and appreciate this benefit.

145.     Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and Class members.

146.     Defendant should be required to disgorge this unjust enrichment.

**B.      State-Specific Claims**

**7. Count VII - Violation of California Unfair Competition Law (Cal. Bus. & Prof. Cod §§ 17200, *et seq.*)**

147.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

148.     Plaintiffs bring this Count on behalf of the California members of the Class.

149.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

150.     Volkswagen's conduct, as described herein, was and is in violation of the UCL. Volkswagen's conduct violates the UCL in at least the following ways:



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

(a)     By knowingly and intentionally concealing from Plaintiffs and the other Class members that the Defeat Device Vehicles suffer from a design defect while obtaining money from Plaintiffs and the Class;

(b)     By marketing Defeat Device Vehicles as possessing functional and defect-free, EPA compliant CleanDiesel engine systems;

(c)     By purposefully installing an illegal "defeat device" in the Defeat Device Vehicles to fraudulently obtain EPA and CARB certification and cause Defeat Device Vehicles to pass emissions tests when in truth and fact they did not pass such tests;

(d)     By violating federal laws, including the Clean Air Act; and

(e)     By violating other California laws, including California laws governing vehicle emissions and emission testing requirements.

151.    Volkswagen's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain CleanDiesel engine systems that failed to comply with EPA and California emissions standards.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

152.   Accordingly, Plaintiffs and the other Class members have suffered injury in fact including lost money or property as a result of Volkswagen's misrepresentations and omissions.

153.   Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under Cal. Bus. & Prof. Code § 17200.

154.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

### 8.   Count VIII - Violation of California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)

155.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

156.   Plaintiffs bring this Count on behalf of California members of the Class.

157.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

158.   The Defeat Device Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

159.    Plaintiffs and the other California members of the Class are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other California members of the Class, and Volkswagen are "persons" as defined in Cal. Civ. Code § 1761(c).

160.    As alleged above, Volkswagen made numerous representations concerning the benefits, efficiency, performance and safety features of CleanDiesel engine systems that were misleading.

161.    In purchasing or leasing the Defeat Device Vehicles, Plaintiffs and the other Class members were deceived by Volkswagen's failure to disclose that the Defeat Device Vehicles were equipped with defective CleanDiesel engine systems that failed EPA and California emissions standards.

162.    Volkswagen's conduct, as described herein, was and is in violation of the CLRA. Volkswagen's conduct violates at least the following enumerated CLRA provisions:

(a)     Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

(b)     Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

(c)     Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

(d)     Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654
www.pcvalaw.com

163.    Plaintiffs and the other California members of the Class have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Defeat Device Vehicles and because they stand to pay additional fuel costs if and when their Defeat Device Vehicles are made to comply with emissions standards.

164.    Volkswagen knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the CleanDiesel engine systems, and that the Defeat Device Vehicles were not suitable for their intended use.

165.    The facts concealed and omitted by Volkswagen to Plaintiffs and the other California members of the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Defeat Device Vehicles or pay a lower price. Had Plaintiffs and the other California members of the Class known about the defective nature of the Defeat Device Vehicles, they would not have purchased or leased the Defeat Device Vehicles or would not have paid the prices they paid.

166.    Plaintiffs have provided Volkswagen with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a). The notice was transmitted to Volkswagen on September 18, 2015 by a California member of the putative class in another lawsuit, *Fiol v. Volkswagen Group of America, Inc.* N.D. Cal. 3:15-cv-04278-JCS.  To the extent necessary, if any, Plaintiffs shall also transmit their own notice to Volkswagen and amend their complaint to reflect said transmittal.

167.    Plaintiffs' and the other California members of the Class' injuries were proximately caused by Volkswagen's fraudulent and deceptive business practices.



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

9ll Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

168.   Therefore, Plaintiffs and the other California members of the Class are entitled to equitable and monetary relief under the CLRA.

**9. Count IX - Violation of California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

169.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

170.   Plaintiffs bring this Count on behalf of the California members of the Class.

171.   California Bus. & Prof. Code § 17500 states:

It is unlawful for any . . . corporation...with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

172.   Volkswagen caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

173.   Volkswagen has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of Defeat Device Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

174.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Volkswagen's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Defeat Device Vehicles, Plaintiffs and the



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

other Class members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, performance and reliability of the Defeat Device Vehicles. Volkswagen's representations turned out not to be true because the Defeat Device Vehicles are distributed with faulty and defective CleanDiesel engine systems, rendering certain safety and emissions functions inoperative. Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Defeat Device Vehicles and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

175.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business. Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

176.   Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class members any money Volkswagen acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**10. Count X - Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314)**

177.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

178.   Plaintiffs bring this Count on behalf of the California members of the Class.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

179.     Volkswagen is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

180.     A warranty that the Defeat Device Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

181.     These Defeat Device Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

182.     Specifically, the Defeat Device Vehicles are inherently defective in that they do not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative; and the CleanDiesel engine system was not adequately designed, manufactured, and tested.

183.     Volkswagen was provided notice of these issues by the investigations of the EPA and individual state regulators.

184.     Plaintiffs and the other Class members have had sufficient direct dealings with either Volkswagen or their agents (dealerships) to establish privity of contract between Plaintiffs and the other Class members. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealers were not intended to be the ultimate consumers of the Defeat Device Vehicles and have no rights under the warranty agreements provided with the Defeat Device Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

Plaintiffs' and the other Class members' Defeat Device Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

185.    As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

### 11. Count XI - Fraud by Concealment (California law)

186.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

187.    This claim is brought on behalf of California members of the Class.

188.    Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Defeat Device Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at 40 times applicable standards.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

189.   Plaintiffs and California members of the Class reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs and California members of the Class did not, and could not, unravel Volkswagen's deception on their own.

190.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and California members of the Class placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 15, 2015 article, "It's just a blatant disregard and intentional manipulation of the system. That's just a whole other level of not only lying to the government, but also lying to your consumer. People buy diesel cars from Volkswagen because they feel they are clean diesel cars." As Ms. Shah put it, "I don't want to be spewing noxious gases into the environment."

191.   Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiffs and California members of the Class. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Volkswagen's false



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs and California members of the Class, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

192. Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the Defeat Device Vehicles because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or California members of the Class. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Defeat Device Vehicles purchased or leased by Plaintiffs and California members of the Class. Whether a manufacturer's products comply with federal and



state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and California members of the Class that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

193.   Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and California members of the Class.

194.   On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and California members of the Class by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions deception.

195.   Plaintiffs and California members of the Class were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and California members of the Class' actions

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or California members of the Class.

196.    Because of the concealment and/or suppression of the facts, Plaintiffs and California members of the Class have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of millions of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and California members of the Class been aware of Volkswagen's emissions deception with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and California members of the Class who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

197.    The value of Plaintiffs' and California members of the Class' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and California members of the Class' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

198.    Accordingly, Volkswagen is liable to Plaintiffs and California members of the Class for damages in an amount to be proven at trial.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

199.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs and California members of the Class' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

200.    Plaintiffs plead this Count pursuant to the law of California on behalf of the California members of the Class.

**12. Count XII - Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability (Cal. Civ. Code §§ 1791.1 & 1792)**

201.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

202.    Plaintiffs bring this Count on behalf of the California members of the Class.

203.    Plaintiffs and the other Class members who purchased or leased the Defeat Device Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

204.    The Defeat Device Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

205.    Volkswagen is a "manufacturer" of the Defeat Device Vehicles within the meaning of Cal. Civ. Code § 1791(j).

206.    Volkswagen impliedly warranted to Plaintiffs and the other Class members that its Defeat Device Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

9ll Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1791.1(a) & 1792, however, the Defeat Device Vehicles do not have the quality that a buyer would reasonably expect.

207.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(a)   Pass without objection in the trade under the contract description.

(b)   Are fit for the ordinary purposes for which such goods are used.

(c)   Are adequately contained, packaged, and labeled.

(d)   Conform to the promises or affirmations of fact made on the container or label.

208.   The Defeat Device Vehicles would not pass without objection in the automotive trade because they do not pass EPA and state law emissions regulations.

209.   Because the "defeat device" falsely causes Defeat Device Vehicles to obtain EPA certification and pass emissions tests when in fact they omit 40 times the permitted level of NOx, they are not safe to drive and thus not fit for ordinary purposes.

210.   The Defeat Device Vehicles are not adequately labeled because the labeling fails to disclose the "defeat device" that causes emissions systems of the Defeat Device Vehicles to become inoperative during normal use.

211.   Volkswagen breached the implied warranty of merchantability by manufacturing and selling Defeat Device Vehicles containing the "defeat device." Furthermore, Volkswagen's fraudulent use of the "defeat device" has caused Plaintiffs and the



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

other Class members to not receive the benefit of their bargain and has caused Defeat Device Vehicles to depreciate in value.

212.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Volkswagen's products, the products' malfunctioning, and the nonuse of their Defeat Device Vehicles.

213.    Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defeat Device Vehicles, or the overpayment or diminution in value of their Defeat Device Vehicles.

214.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

### 13. Count XIII - Violation of the Washington Consumer Protection Act ("CPA") (RCW §§ 719.86, *et seq.*)

215.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

216.    Plaintiffs assert this Count on behalf of the Washington State members of the Class.

217.    This claim arises under the Washington Consumer Protection Act, RCW §§ 19.86, et seq. ("CPA").



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

218.    At all relevant times, Defendant engaged in "trade" and/or "commerce" within the meaning of RCW § 19.86.010.

219.    The CPA broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or business. RCW § 19.86.0120.

220.    Defendant made uniform representations that its diesel vehicles were of a particular standard, quality, or grade when they were and are not, and that they would perform as represented when they did not, and, as set forth above, made false and/or misleading statements regarding the capacity and characteristics of Defeat Device Vehicles that, as set forth above, were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Washington Plaintiffs and were made in violation of the CPA.

221.    In their communications with and disclosures to Washington members of the Class, Defendant intentionally concealed and/or failed to disclose that the Defeat Device Vehicles included a software program designed to cheat emissions testing, and that the true emissions of those vehicles were far higher than claimed. Those omissions were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Washingtonians, and were made in clear violation of the CPA.

222.    Defendant had exclusive knowledge that the Defeat Device Vehicles had and have the defects set forth above, facts unknown to Washington members of the Class. Defendant's exclusive knowledge of these material facts gave rise to a duty to disclose such facts, which it failed to perform.

223.    The representations made by Defendant and the facts concealed and/or not disclosed by Defendant are material facts that were likely to deceive reasonable consumers,



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

and that a reasonable consumer would have relied on in deciding whether or not to purchase a Defeat Device Vehicle manufactured by Defendant.

224.    The representations made by Defendant and the facts concealed and/or not disclosed by Defendant detrimentally affected the public interest. There is an inherent public interest in reducing emissions from vehicles, and properly advertising emission levels. The Defeat Device Vehicles did not operate as advertised and thus negatively affected the public interest.

225.    Washington members of the Class justifiably acted or relied to their detriment on Defendant's affirmative representations and the concealed and/or non-disclosed facts as evidenced by their purchase and/or use of the defective Defeat Device Vehicles.

226.    Had Defendant disclosed all material information regarding the defeat devices, Washington members of the Class would not have purchased and used the Defeat Device Vehicles.

227.    Defendant knew, or was reckless in not knowing, that its statements about its "CleanDiesel" vehicles were false and/or misleading.

228.    By the conduct described herein, Defendant engaged in unfair methods of competition and/or unfair or deceptive act or practices in the conduct of business, trade, or commerce.

229.    As a direct and proximate result of Defendant's violations of the forgoing law, the Washington members of the Class have been injured.

230.    The Washington members of the Class have been damaged and are entitled to all of the damages, remedies, fees, and costs available under the CPA.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

**14. Count XIV - Breach of Warranties of Fitness & Merchantability (RCW §§ 62A.2-314 & 62A.2-315)**

231.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

232.     Plaintiffs assert this Count on behalf of the Washington State members of the Class.

233.     Defendant's actions, omissions, misrepresentations, fraud, and other unlawful actions as detailed in this complaint, coupled with sales of Defendant's sales of Defeat Device Vehicles to Plaintiffs by Defendants or through its agents, violate the implied warranty of merchantability created by RCW 62A.2-314 and the implied warranty of fitness for a particular purpose created by RCW 62A.2-315.

234.     As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiffs and Washington members of the Class have suffered damages and continue to suffer damages in an amount to be proven at trial.

**15. Count XV - Violation of the Oregon Unlawful Trade Practices Act ("UTPA") (Or. Rev. Stat. §§ 646.605, *et seq.*)**

235.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

236.     Plaintiffs assert this Count on behalf of the Oregon members of the Class.

237.     Defendant is a person within the meaning of Or. Rev. Stat. § 646.605(4).

238.     The Defeat Device Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

239.    The UPTA prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that . . . goods . . . have . . . characteristics . . . uses, benefits, . . . or qualities that they do not have; g) Represent[ing] that . . . goods . . . are of a particular standard [or] quality . . . if they are of another; (i) Advertis[ing] . . . goods or services with intent not to provide them as advertised;" and "(u) engag[ing] in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1).

240.    Volkswagen engaged in unlawful trade practices, including representing that Defeat Device Vehicles have characteristics, uses, benefits and qualities that they do not have; representing that Defeat Device Vehicles are of a particular standard and quality when they are not; advertising Defeat Device Vehicles with the intent not to sell them as advertised; and engaging in other unfair or deceptive acts.

241.    Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations and/or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Defeat Device Vehicles.

242.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

243.    By failing to disclose and actively concealing the "defeat device" and its emissions scheme, instead marketing its vehicles as safe, environmentally friendly, and efficient, with low emissions, Volkswagen engaged in deceptive business practices in violation of the UTPA.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

244.    Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class members, about the true cleanliness, efficiency, performance, and emissions of the Defeat Device Vehicles, as well as their true value.

245.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Defeat Device Vehicles with an intent to mislead Plaintiffs and Class members into purchasing the Defeat Device Vehicles.

246.    Volkswagen knew or should have known that its conduct violated the UPTA.

247.    As a direct and proximate result of Volkwagen's violations of the UPTA, Plaintiffs and the Class members have suffered actual damages, injury-in-fact and ascertainable losses.

248.    Volkswagen's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

249.    Plaintiffs and the Class members are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1), attorney's fees and costs, as well as punitive damages because Volkswagen engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

### 16. Count XVI - Violation of the Iowa Consumer Frauds Act ("CFA") (I.C.A. §§ 714.16 *et. seq.*)

250.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

251.    Plaintiffs assert this Count on behalf of the Iowa members of the Class.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

252.    Plaintiffs, Iowa members of the Class, and Volkswagen are all "person[s]" for purposes of the CFA.

253.    The Defeat Device Vehicles meet the definition of "merchandise" for purposes of the CFA.  I.C.A. § 714.16(1)(i).

254.    Plaintiffs purchased the Defeat Device Vehicles for personal, family or household purposes.

255.    Pursuant to the CFA, "deception" means "an act or practice which has the tendency or capacity to mislead a substantial number of consumers as to a material fact or facts. I.C.A. §714.16(1)(f).

256.    Pursuant to the CFA, "use or employment by a person of an unfair practice, deception, fraud, false pretense, false promise, or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely on the concealment, suppression or omission, in connection with the lease, sale or advertisement of any merchandise or the solicitation of contributions for charitable purposes, whether or not a person has in fact been misled, deceived, or damaged, is an unlawful practice". I.C.A. §714.16(2)(a).

257.    In selling the Defeat Device Vehicles to Plaintiffs, Volkswagen has misrepresented material facts in representing that the Defeat Device Vehicles met the standard for emissions under the Clean Air Act when the Defeat Device Vehicles do not meet the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, emission standards when driven under normal driving conditions.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

258.     By selling vehicles represented to meet the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, defendant Volkswagen violated the CFA, I.C.A. § 714.06 *et seq.*

259.     By advertising and selling the subject vehicles as being "clean diesel," defendant Volkswagen violated the CFA, I.C.A. § 714.06 *et seq.*

260.     The misrepresentations of Volkswagen to Plaintiffs with material facts regarding the defective and/or fraudulent condition of the vehicles at issue have caused injury to Plaintiffs including, but not limited to, the diminished value of the vehicles, payment of "mark-up" costs for Defeat Device Vehicles, increased fuel costs for the Defeat Device Vehicles, value of lost time in repairing or replacing the Defeat Device Vehicles, and/or the cost of repairing and replacing the defective and/or non-conforming system within the Defeat Device Vehicles.

### 17. Count XVII - Violation of the Georgia Uniform Deceptive Trade Practices Act (Georgia UTPDA) (GA. CODE ANN. § 10-1-370, *et seq.*)

261.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

262.     Plaintiffs assert this Count on behalf of the Georgia members of the Class.

263.     Volkswagen, Plaintiffs, and the Class members are "persons' within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE. ANN. § 10-1- 371(5).

264.     The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE. ANN. § 10-1-372(a). By fraudulently installing the "defeat device" to make it appear



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive trade practices prohibited by the Georgia UDTPA.

265.    In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Defeat Device Vehicles.

266.    Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

267.    Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

268.    By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Georgia UDTPA.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

269.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Defeat Device Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

270.    Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Defeat Device Vehicles.

271.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Defeat Device Vehicles with an intent to mislead Plaintiffs and the Class members.

272.    Volkswagen knew or should have known that its conduct violated the Georgia UDTPA.

273.    As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Defeat Device Vehicles and the Volkswagen and Audi brands that were either false or misleading.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

274.    Volkswagen owed Plaintiffs and the Class members a duty to disclose the true safety, cleanliness, efficiency and reliability of the Defeat Device Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

a.      Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

b.      Intentionally concealed the foregoing from Plaintiffs; and/or

c.      Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Defeat Device Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

275.    Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Defeat Device Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

276.    Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs and the Class members. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

277.    Plaintiffs and the Class members suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

278.    Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Georgia UDTPA. All owners of Defeat Device Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

279.    Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

280.    As a direct and proximate result of Volkswagen's violations of the Georgia UDTPA, Plaintiffs and the Class members have suffered injury-in-fact and/or actual damage.

281.    Plaintiffs seek an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per GA. CODE. ANN § 10-1-373.

### 18. Count XVIII - Violation of Georgia's Fair Business Practices Act (GA. CODE ANN. § 10-1-390, *et seq.*)

282.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

283.    Plaintiffs intend to assert a claim on behalf of the Georgia members of the Class under the Georgia Fair Business Practices Act ("Georgia FBPA") which declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE. ANN. § 10-1-393(b). Plaintiffs will make a demand in satisfaction of GA. CODE. ANN. § 10-1-399, and may amend this Complaint to assert claims under the Georgia FBPA once the required 30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

### 19. Count XIX - Violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ch. 93A).

284.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

285.    Plaintiffs intend to assert a claim under the Massachusetts Consumer Protection Act ("MCPA") on behalf of the Massachusetts members of the Class, which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS CH.93A, § 2(1). Plaintiff Kerri Sanphy will make a demand in satisfaction of MASS. GEN. LAWS CH.93A, § 9(3), and may amend this Complaint to assert claims under the MCPA once the required 30 days have



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the MCPA.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request the following relief:

A. Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B. An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of a recall or free replacement program;

D. Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E. Revocation of acceptance;

F. Damages under the Magnuson-Moss Warranty Act;

G. For treble and/or punitive damages as permitted by applicable laws;

H. An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

I. An award of costs and attorneys' fees; and

J. Such other or further relief as may be appropriate.

## X.   JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

DATED: October 8, 2015

PFAU COCHRAN VERTETIS AMALA PLLC

By: ____/s/ Darrell L. Cochran_____

Darrell L. Cochran, WSBA No. 22851
Christopher E. Love, WSBA No. 42832
Loren A. Cochran, WSBA No. 32773
PFAU COCHRAN VERTETIS AMALA PLLC
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Telephone: (253) 777-0799
Facsimile: (253) 627-0654
darrell@pcvalaw.com
chris@pcvalaw.com
loren@pcvalaw.com

4839-8220-3177, v. 1



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

# EXHIBIT A



**Das Auto.**

September 29, 2015



```
*******************AUTO**3-DIGIT 980
                    352145 18/905/1
```

Dear ████

Earlier this month, Volkswagen Group of America, Inc., and Volkswagen AG received notice from the U.S. Environmental Protection Agency, U.S. Department of Justice, and the California Air Resources Board, informing us that those agencies had determined that certain 2.0L 4-cylinder TDI vehicles do not comply with emissions standards. According to our records, you own or lease one of these vehicles.*

I am writing you today to offer a personal and profound apology. Volkswagen has violated your trust. I understand and fully appreciate your anger and frustration. I would like you to know that we take full responsibility and are cooperating with all responsible agencies. I can also assure you that we are committed to making this right for you — and taking steps to prevent something like this from ever happening again.

Right now, we are working hard on remedies to bring vehicles into emissions compliance as soon as possible. Getting this right will take some time, but we will notify you immediately once we have more information. Until then, please know that your vehicle remains both safe to drive and legal to drive, as noted by the EPA in its September 18 press release. You do not need to take any action at this time; all we ask for is your patience.

Along with our parent company, Volkswagen AG, we are committed at every level of our company to do what must be done to begin to regain your trust.

If you have questions or concerns, please contact our Customer CARE Center at vwcustomercare@vw.com, or by calling 1-800-822-8987. You can also visit www.vwdieselinfo.com.

Thank you for your understanding, and for being a very valued customer.

Sincerely,

Michael Horn
President and CEO
Volkswagen Group of America, Inc.

*These vehicles include:
· VW Jetta TDI (Model Years 2009–2015)
· VW Jetta SportWagen TDI (Model Years 2009–2014)
· VW Golf TDI (Model Years 2010–2015)
· VW Golf SportWagen TDI (Model Year 2015)
· VW Beetle TDI and VW Beetle Convertible TDI (Model Years 2012–2015)
· VW Passat TDI (Model Years 2012–2015)

# EXHIBIT B



**VOLKSWAGEN**

INTERNET ARCHIVE
WayBackMachine

http://www.volkswagengroupamerica.com/environment.html    Go

11 captures
20 Jan 14 - 5 Sep 15

DEC    JAN    MAR    Close ✖
◄    20    ►    Help ❓
2013   2014   2015

ABOUT US    INNOVATIONS    COMMUNITY & SOCIAL RESPONSIBILITY    CHATTANOOGA    NEWSROOM    CAREERS

# Environment

| Environment |
| Fuel Efficiency |
| Clean Diesel TDI |
| Alternative Fuels & Power Systems |
| Operational Sustainability |

### Our Top Priority

At Volkswagen Group of America we take environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives. Customers looking for the most fuel-efficient model in each particular vehicle class need only look for our BlueMotion brand, Audi A3 TDI, VW Jetta TDI, which have been named the 2010 World Green Car, the 2010 Green Car of the Year and 2009 Green Car of the Year, respectively. But our commitment doesn't stop at the cars we build. We work hard to be sustainable and eco-friendly in all of our operations — from our LEED®-certified headquarters in Virginia and LEED-aggressive Chattanooga plant, through all aspects of how we do business in the United States. Environmental stewardship has always been an integral part of our business, not an obligatory side issue. And it shows. In fact, Volkswagen Group of America is recognized as "the most environmentally friendly car company selling in the USA" by J.D. Power and Associates.



© 2008-2013 Volkswagen Group of America, Inc. All Rights Reserved.

Privacy Policy   ●   Terms & Agreements

# EXHIBIT C

# CLEAN DIESEL. CLEARLY BETTER.

This is not your grandfather's diesel. No way. Clean Diesel technology has changed everything. From the pump to the engine, it's remarkably improved the driving experience. Say good-bye to loud trips with dirtier exhaust. And hello to great MPG, powered with exhilarating performance.

SCROLL DOWN


# MORE MPG. FEWER STOPS AT THE PUMP.

Clean Diesel partner vehicles are on average 18% more fuel-efficient on the highway than their gasoline counterparts. And with over one-third of Clean Diesel partner vehicles getting an EPA-estimated 42 MPG hwy, you're not only driving longer, but stopping less.

## SHOW ME THE SAVINGS



TRIPS TO THE PUMP



MY WALLET

# POWERFULLY QUIET.

When it comes to driving a Clean Diesel vehicle, torque is amazing. Quick acceleration and powerful handling are just what you'd expect from a sports car. But here is another surprise: Clean Diesel vehicles run much more quietly than those powered by their traditional diesel counterparts. Let's just say, you've got to hear it to believe it.

## COMPARE CLEAN DIESEL TO GASOLINE





WATCH IT PERFORM       HEAR THAT? EXACTLY.

| MPG | PERFORMANCE | | ENVIRONMENT | PARTNERS |



# A COUNTRY WITH LESS SMOG.

We used to think of diesel as black clouds of smoke and noxious fumes. But that was then. Now we have Clean Diesel that meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner.

SEE THE IMPACT



OIL CONSUMPTION                    SMOG LEVELS

SHARE CLEAN DIESEL          MORE INFORMATION

CLEAN DIESEL AND BRIGHT IDEAS
ARE CONTAGIOUS.

Starting with Audi, BMW, Bosch, Mercedes-Benz, Porsche and Volkswagen, Clean Diesel is gaining
momentum worldwide with increasing development in all the major car manufacturers and others.
Our partners include:

# EXHIBIT D

INTERNET ARCHIVE
WaybackMachine

http://www.volkswagengroupamerica.com/fuel_efficiency.html   Go

2 captures
15 Apr 15 - 5 Sep 15

MAR | APR | SEP
◄ | 15 | ►
2014 | 2015 | 2016

Close ✖
Help ❓

# VOLKSWAGEN
## GROUP OF AMERICA

     VW CREDIT, INC.

ABOUT US    INNOVATIONS    COMMUNITY & SOCIAL RESPONSIBILITY    CHATTANOOGA    NEWSROOM    CAREERS

# Environment

| |
|---|
| Environment |
| Fuel Efficiency |
| Clean Diesel TDI |
| Alternative Fuels & Power Systems |
| Operational Sustainability |



## Fuel Efficiency

At Volkswagen Group of America, we are committed to driving progress through better-engineered, efficient vehicles that don't sacrifice performance. But it all starts with our vision for making cars greener than ever. We take steps to ensure that every vehicle we manufacture is the best it can be in terms of its environmental properties. We constantly strive to improve the efficiency and economy of our engines, minimize the power consumption of electrical components and reduce the weight of our cars.

It's also important to us to measure how we're doing. We use Life Cycle Assessments to calculate precisely the impact of a specific vehicle model on the environment at various stages of its life: during manufacturing, while being driven and after it is recycled.

We're committed to promoting sustainable mobility and environmentally conscious lifestyles in everything we do, and we're particularly proud of our green cars and our vision for cars of the future. Here are a few examples of how we aim to offer carbon-neutral mobility through our cars.

© 2008-2014 Volkswagen Group of America, Inc. All Rights Reserved.

Privacy Policy    •    Terms & Agreements

**EXHIBIT E**



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

SEP 1 8 2015

OFFICE OF
ENFORCEMENT AND
COMPLIANCE ASSURANCE

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

Volkswagen AG
Audi AG
Volkswagen Group of America, Inc.
Thru:

David Geanacopoulos
Executive Vice President Public Affairs and General Counsel
Volkswagen Group of America, Inc.
2200 Ferdinand Porsche Drive
Herndon, VA 20171

Stuart Johnson
General Manager
Engineering and Environmental Office
Volkswagen Group of America, Inc.
3800 Hamlin Road
Auburn Hills, MI 48326

       Re:    Notice of Violation

Dear Mr. Geanacopoulos and Mr. Johnson:

The United States Environmental Protection Agency (EPA) has investigated and continues to
investigate Volkswagen AG, Audi AG, and Volkswagen Group of America (collectively, VW)
for compliance with the Clean Air Act (CAA), 42 U.S.C. §§ 7401–7671q, and its implementing
regulations. As detailed in this Notice of Violation (NOV), the EPA has determined that VW
manufactured and installed defeat devices in certain model year 2009 through 2015 diesel light-
duty vehicles equipped with 2.0 liter engines. These defeat devices bypass, defeat, or render
inoperative elements of the vehicles' emission control system that exist to comply with CAA
emission standards. Therefore, VW violated section 203(a)(3)(B) of the CAA, 42 U.S.C.
§ 7522(a)(3)(B). Additionally, the EPA has determined that, due to the existence of the defeat

devices in these vehicles, these vehicles do not conform in all material respects to the vehicle specifications described in the applications for the certificates of conformity that purportedly cover them. Therefore, VW also violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing these vehicles, or for causing any of the foregoing acts.

Law Governing Alleged Violations

This NOV arises under Part A of Title II of the CAA, 42 U.S.C. §§ 7521–7554, and the regulations promulgated thereunder. In creating the CAA, Congress found, in part, that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare." CAA § 101(a)(2), 42 U.S.C. § 7401(a)(2). Congress' purpose in creating the CAA, in part, was "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," and "to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution." CAA § 101(b)(1)–(2), 42 U.S.C. § 7401(b)(1)–(2). The CAA and the regulations promulgated thereunder aim to protect human health and the environment by reducing emissions of nitrogen oxides (NOx) and other pollutants from mobile sources of air pollution. Nitrogen oxides are a family of highly reactive gases that play a major role in the atmospheric reactions with volatile organic compounds (VOCs) that produce ozone (smog) on hot summer days. Breathing ozone can trigger a variety of health problems including chest pain, coughing, throat irritation, and congestion. Breathing ozone can also worsen bronchitis, emphysema, and asthma. Children are at greatest risk of experiencing negative health impacts from exposure to ozone.

The EPA's allegations here concern light-duty motor vehicles for which 40 C.F.R. Part 86 sets emission standards and test procedures and section 203 of the CAA, 42 U.S.C. § 7522, sets compliance provisions. Light-duty vehicles must satisfy emission standards for certain air pollutants, including NOx. 40 C.F.R. § 86.1811-04. The EPA administers a certification program to ensure that every vehicle introduced into United States commerce satisfies applicable emission standards. Under this program, the EPA issues certificates of conformity (COCs), and thereby approves the introduction of vehicles into United States commerce.

To obtain a COC, a light-duty vehicle manufacturer must submit a COC application to the EPA for each test group of vehicles that it intends to enter into United States commerce. 40 C.F.R. § 86.1843-01. The COC application must include, among other things, a list of all auxiliary emission control devices (AECDs) installed on the vehicles. 40 C.F.R. § 86.1844-01(d)(11). An AECD is "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.1803-01. The COC application must also include "a justification for each AECD, the parameters they sense and control, a detailed justification of each AECD that results in a reduction in effectiveness of the emission control system, and [a] rationale for why it is not a defeat device." 40 C.F.R. § 86.1844-01(d)(11).

A defeat device is an AECD "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and

use, unless: (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles . . . ." 40 C.F.R. § 86.1803-01.

Motor vehicles equipped with defeat devices, such as those at issue here, cannot be certified. EPA, *Advisory Circular Number 24: Prohibition on use of Emission Control Defeat Device* (Dec. 11, 1972); *see also* 40 C.F.R. §§ 86-1809-01, 86-1809-10, 86-1809-12. Electronic control systems which may receive inputs from multiple sensors and control multiple actuators that affect the emission control system's performance are AECDs. EPA, *Advisory Circular Number 24-2: Prohibition of Emission Control Defeat Devices – Optional Objective Criteria* (Dec. 6, 1978). "Such elements of design could be control system logic (i.e., computer software), and/or calibrations, and/or hardware items." *Id.*

"Vehicles are covered by a certificate of conformity only if they are in all material respects as described in the manufacturer's application for certification . . . ." 40 C.F.R. § 86.1848-10(c)(6). Similarly, a COC issued by EPA, including those issued to VW, state expressly, "[t]his certificate covers only those new motor vehicles or vehicle engines which conform, in all material respects, to the design specifications" described in the application for that COC. *See also* 40 C.F.R. §§ 86.1844-01 (listing required content for COC applications), 86.1848-01(b) (authorizing the EPA to issue COCs on any terms that are necessary or appropriate to assure that new motor vehicles satisfy the requirements of the CAA and its regulations).

The CAA makes it a violation "for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." CAA § 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854-12(a)(3)(ii). Additionally, manufacturers are prohibited from selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing, any new motor vehicle unless that vehicle is covered by an EPA-issued COC. CAA § 203(a)(1), 42 U.S.C. § 7522(a)(1); 40 C.F.R. § 86.1854-12(a)(1). It is also a violation to cause any of the foregoing acts. CAA § 203(a), 42 U.S.C. § 7522(a); 40 C.F.R. § 86-1854-12(a).

Alleged Violations

Each VW vehicle identified by the table below has AECDs that were not described in the application for the COC that purportedly covers the vehicle. Specifically, VW manufactured and installed software in the electronic control module (ECM) of these vehicles that sensed when the vehicle was being tested for compliance with EPA emission standards. For ease of reference, the EPA is calling this the "switch." The "switch" senses whether the vehicle is being tested or not based on various inputs including the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure. These inputs precisely track the parameters of the federal test procedure used for emission testing for EPA certification purposes. During EPA

3

emission testing, the vehicles' ECM ran software which produced compliant emission results under an ECM calibration that VW referred to as the "dyno calibration" (referring to the equipment used in emissions testing, called a dynamometer). At all other times during normal vehicle operation, the "switch" was activated and the vehicle ECM software ran a separate "road calibration" which reduced the effectiveness of the emission control system (specifically the selective catalytic reduction or the lean NOx trap). As a result, emissions of NOx increased by a factor of 10 to 40 times above the EPA compliant levels, depending on the type of drive cycle (e.g., city, highway).

The California Air Resources Board (CARB) and the EPA were alerted to emissions problems with these vehicles in May 2014 when the West Virginia University's (WVU) Center for Alternative Fuels, Engines & Emissions published results of a study commissioned by the International Council on Clean Transportation that found significantly higher in-use emissions from two light duty diesel vehicles (a 2012 Jetta and a 2013 Passat). Over the course of the year following the publication of the WVU study, VW continued to assert to CARB and the EPA that the increased emissions from these vehicles could be attributed to various technical issues and unexpected in-use conditions. VW issued a voluntary recall in December 2014 to address the issue. CARB, in coordination with the EPA, conducted follow up testing of these vehicles both in the laboratory and during normal road operation to confirm the efficacy of the recall. When the testing showed only a limited benefit to the recall, CARB broadened the testing to pinpoint the exact technical nature of the vehicles' poor performance, and to investigate why the vehicles' onboard diagnostic system was not detecting the increased emissions. None of the potential technical issues suggested by VW explained the higher test results consistently confirmed during CARB's testing. It became clear that CARB and the EPA would not approve certificates of conformity for VW's 2016 model year diesel vehicles until VW could adequately explain the anomalous emissions and ensure the agencies that the 2016 model year vehicles would not have similar issues. Only then did VW admit it had designed and installed a defeat device in these vehicles in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing.

VW knew or should have known that its "road calibration" and "switch" together bypass, defeat, or render inoperative elements of the vehicle design related to compliance with the CAA emission standards. This is apparent given the design of these defeat devices. As described above, the software was designed to track the parameters of the federal test procedure and cause emission control systems to underperform when the software determined that the vehicle was not undergoing the federal test procedure.

VW's "road calibration" and "switch" are AECDs[1] that were neither described nor justified in the applicable COC applications, and are illegal defeat devices. Therefore each vehicle identified by the table below does not conform in a material respect to the vehicle specifications described in the COC application. As such, VW violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), each time it sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported (or caused any of the foregoing with respect to) one of the hundreds of thousands of new motor vehicles within these test groups. Additionally, VW

---

[1] There may be numerous engine maps associated with VW's "road calibration" that are AECDs, and that may also be defeat devices. For ease of description, the EPA is referring to these maps collectively as the "road calibration."

violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), each time it manufactured and installed into these vehicles an ECM equipped with the "switch" and "road calibration."

The vehicles are identified by the table below. All vehicles are equipped with 2.0 liter diesel engines.

| Model Year | EPA Test Group | Make and Model(s) |
|---|---|---|
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta Sportwagen |
| 2009 | 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

Enforcement

The EPA's investigation into this matter is continuing. The above table represents specific violations that the EPA believes, at this point, are sufficiently supported by evidence to warrant the allegations in this NOV. The EPA may find additional violations as the investigation continues.

The EPA is authorized to refer this matter to the United States Department of Justice for initiation of appropriate enforcement action. Among other things, persons who violate section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), are subject to a civil penalty of up to $3,750 for each violation that occurred on or after January 13, 2009;[1] CAA § 205(a), 42 U.S.C. § 7524(a); 40 C.F.R. § 19.4. In addition, any manufacturer who, on or after January 13, 2009, sold, offered for sale, introduced into commerce, delivered for introduction into commerce, imported, or caused any of the foregoing acts with respect to any new motor vehicle that was not covered by an EPA-issued COC is subject, among other things, to a civil penalty of up to $37,500 for each violation.[2] CAA § 205(a), 42 U.S.C. § 7524(a); 40 C.F.R. § 19.4. The EPA may seek, and district courts may order, equitable remedies to further address these alleged violations. CAA § 204(a), 42 U.S.C. § 7523(a).

---

[1] $2,750 for violations occurring prior to January 13, 2009.
[2] $32,500 for violations occurring prior to January 13, 2009.

The EPA is available to discuss this matter with you. Please contact Meetu Kaul, the EPA attorney assigned to this matter, to discuss this NOV. Ms. Kaul can be reached as follows:

Meetu Kaul
U.S. EPA, Air Enforcement Division
1200 Pennsylvania Avenue, NW
William Jefferson Clinton Federal Building
Washington, DC 20460
(202) 564-5472
kaul.meetu@epa.gov

Sincerely,

Phillip A. Brooks
Director
Air Enforcement Division
Office of Civil Enforcement

Copy:
Todd Sax, California Air Resources Board
Walter Benjamin Fisherow, United States Department of Justice
Stuart Drake, Kirkland & Ellis LLP